Roze, Respondent, v. Architectural Building Products, Inc., Appellant.

*February 6—March 7, 1961.*

For the appellant there were briefs by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Lloyd J. Planert.*

For the respondent there was a brief by *Everson, Whitney, O'Melia & Everson* of Green Bay, and oral argument by *James L. Everson.*

BROADFOOT, J.   Like many other businessmen, the officers of the defendant did not reduce the terms of the profit-sharing plan to writing.   There was no legal requirement that the terms of the plan and agreement with the plaintiff in connection therewith had to be in writing.   However, as often happens in such cases, there was a dispute between the parties as to the terms of the plan and of the agreement entered into. Under such circumstances it is necessary that such conflicts be resolved by some trier of facts, either a jury or a court.

Although the terms were in dispute, the purpose of the plan was not.   The defendant did not manufacture any of the materials that it sold.   Its profits depended on the amount they could be sold for over and above cost.   The manager of the defendant noted in the summer and fall of 1957 that, although sales were increasing, the percentage of profit on each contract was decreasing.   The plan was

devised to encourage salesmen not only to obtain more contracts but to increase the markup above cost in obtaining contracts. To encourage this increased markup the salesmen were promised a percentage of the profits over and above a "break even" point assigned to each salesman by the company. The "break even" point first assigned to the plaintiff was $8,000 per month, which was later increased to $10,000 per month.

To some extent the dispute as to the agreement is reflected by the questions in the verdict and, to the extent that the jury was asked to pass thereon, it accepted the plaintiff's version thereof. The defendant did not attack the jury findings in the trial below but moved for judgment notwithstanding the verdict, and it does not attack the verdict here. It is the contention of the defendant that the contract, whatever its exact terms, was an entire contract and not a divisible one, and that the plaintiff did not complete his contract. Therefore, it is contended, plaintiff is entitled to nothing by way of commissions or bonus. We are asked as a matter of law to so hold.

The plaintiff testified that in addition to seeking out prospects, submitting bids, and securing contracts it was a part of his work as a salesman for the defendant to service the contracts. This servicing consisted in part of periodic checkups on the larger jobs in order to expedite the delivery of materials, to give advice as to installation, to make a final inspection, to act as intermediary between any complainant and the company, and to assist in the collection of overdue accounts.

It is the contention of the defendant that the undisputed testimony in the case shows that it was the intention of the parties that the plaintiff would do all of the necessary service work subsequently required on the part of a salesman in connection with each job in order to earn the bonus or commission. We have read the entire record and rechecked

the pages thereof to which the defendant refers to substantiate this statement. We do not find that the record supports the contention. It is true that the plaintiff enumerated several items of checking and servicing in connection with contracts that he did as a salesman while employed by the defendant. We cannot, however, find in the record that there was any change in his duties after the bonus plan went into effect. His monthly salary continued and it is his contention that he was to be compensated for servicing the contracts by his monthly salary and that the bonus or commission was due as found by the jury.

Perhaps another question should have been submitted to the jury as to whether the plaintiff was required to perform said services in connection with the profit-sharing plan but no request for such a finding was made. Nor was the matter brought to the attention of the trial court. It is to meet such situations that sec. 270.28, Stats., was enacted. Said section reads as follows:

"When some controverted matter of fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, such matter of fact shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on such matter shall be deemed a waiver of jury trial *pro tanto*."

The trial court did not pass directly thereon but pursuant to the statute we must hold that such matter of fact was determined by the court in conformity with the judgment entered.

The trial court, in his memorandum decision, discusses the question of entire and divisible contracts and quotes from 3A Corbin, Contracts, p. 277, sec. 694, and 3 Williston, Contracts (rev. ed.), p. 2416, sec. 862, at page 2418. Corbin criticizes the use of the terms "entire" and "divisible" as being terms of confusion. We do not choose to add to

the confusion by attempting to define both and to show, as does Corbin, that a contract may be both entire and divisible at the same time. If we had a written document embracing the terms of the plan and the agreement between the parties with reference thereto we would be able to determine whether the contract was entire or divisible. However, under the circumstances the defendant had everything tried that it wished to have tried, everything was submitted to the jury that it wished to have submitted, and it does not point to any specific error in the trial of the action.

The trial court, after reviewing the authorities, in a memorandum decision determined that the jury verdict fixed the intention of the parties and that plaintiff was entitled to judgment. His memorandum decision is logical and convincing, and his decision on defendant's motion for judgment notwithstanding the verdict is supported by the record.

*By the Court.*—Judgment affirmed.